Approved: _____
CECILIA VOGEL / ANDREW A. ROHRBACH
Assistant United States Attorney

Before: THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

ORIGINAL

19 MAG 8613

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>LAZETT FISHER,<br>a/k/a "Lazette Fisher,"<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violation of<br>18 U.S.C. § 1349<br><br>COUNTY OF OFFENSE: NEW YORK |

---

SOUTHERN DISTRICT OF NEW YORK, ss.:

ERIN MARKEVITCH, being duly sworn, deposes and says that she is a Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Conspiracy to Commit Wire Fraud)

1. From at least in or about July 2017 up to and including in or about March 2018, in the Southern District of New York and elsewhere, LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and object of the conspiracy that LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose

of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Task Force Officer for HSI and I have been personally involved in the investigation of this matter. I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The Lottery Scheme

4. I and other law enforcement agents have been investigating LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, who, along with other individuals, participated in a scheme (the "Lottery Scheme") to obtain money fraudulently from elderly victims by telling them that they won a lottery and informing them that they needed to prepay certain fees in order to obtain their winnings.

5. Based on my training and experience with investigating lottery schemes, I know that conspirators in such schemes typically seek to have victims send cash through the mail, so it is harder for the Government to trace the proceeds of their fraud. I also know that the conspirators in such schemes typically use multiple accounts to deposit and send cash, including the accounts of other individuals, in order to avoid detection of the fraudulent activity by banks and law enforcement.

### Victim-1 Made Payments to LAZETT FISHER and the Conspirators

6. Based on my conversations with one victim ("Victim-1") and my conversations with other law enforcement officers have learned the following, in substance and in part:

a. Beginning in or about 2012 through at least in or about the present, Victim-1 has received phone calls from

"Bobby Marley," "Jack Lucky," and "James Jackson," who claimed they represented "Winners International" and "Interscope."

  b. These callers told Victim-1 that she had won a lottery in an amount of up to approximately $54 billion dollars. They also told her that she would receive her winnings only if she prepaid certain fees. Accordingly, they instructed her to make various payments to specific individuals, including LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, and a co-conspirator ("CC-1"),[1] and they specifically instructed her as to the amount of each payment, the means of each payment, and how much money to withdraw from her account when withdrawing money to complete the payments.

  c. After Victim-1 made her first payment, she received calls approximately daily in connection with the Lottery Scheme.

  7. Based on conversations with Victim-1, my review of bank records, and other financial records, I have learned that during the course of the Lottery Scheme, at the direction of the callers perpetrating the Lottery Scheme, Victim-1 transferred over approximately $373,869 to LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, CC-1, and their co-conspirators and has not received "lottery proceeds" in return.

  8. Based on my review of travel records, law enforcement conversations with the Jamaican customs authorities, documents provided by the Jamaican customs authorities, and my conversations with Victim-1 and CC-1, I have learned that on or about May 25, 2017, CC-1 flew from John F. Kennedy International Airport in New York to Jamaica,[2] where he was stopped by the Jamaican customs authorities. The Jamaican customs authorities

---

[1] CC-1 has pleaded guilty and is cooperating with law enforcement pursuant to a cooperation agreement in the hope of obtaining leniency at sentencing. Some of the information provided by CC-1 has been corroborated by bank and phone records.

[2] Based on my review of flight path information provided by the Federal Aviation Administration, I have learned, among other things, that this flight flew over bodies of water within the Eastern District of New York, including the channels between Long Beach Island and Long Island and Jones Inlet between Long Beach Island and Jones Beach Island. See 18 U.S.C. § 112(b) ("The Southern District comprises . . . concurrently with the Eastern District, the waters within the Eastern District.").

recovered approximately $60,000 in cash concealed in the lining of CC-1's suitcase and approximately $2,000 cash on CC-1's person. CC-1 provided a written statement to the Jamaican customs authorities, in which he stated, in substance and in part, that Victim-1 was his aunt and that she had provided the approximately $60,000 in cash to him as a loan in order for him to purchase a house. The Jamaican customs authorities seized the cash on the belief that CC-1 was attempting to smuggle proceeds from a lottery scam. Victim-1 and CC-1 have informed law enforcement, in sum and substance, that Victim-1 had sent the approximately $60,000 to CC-1 as part of the Lottery Scheme and that Victim-1 did not loan the money to CC-1.

9. Based on Postal money orders from Victim-1 and conversations with Victim-1, I know that in addition to the approximately $60,000 payment described above, at the direction of the callers perpetrating the Lottery Scheme, Victim-1 sent at least $15,000 via Postal money order and at least $40,000 in cash by mail to CC-1 in Brooklyn, New York.

10. Based on U.S. Postal Service mail receipts maintained by Victim-1, Victim-1's contemporaneous notes, and Victim-1's bank records, I know that the callers perpetrating the lottery scheme provided Victim-1 the address of LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, in Philadelphia, PA. On or about the dates set forth below, at the direction of the callers perpetrating the Lottery Scheme, Victim-1 mailed the following approximate amounts of cash to FISHER:

| Date | Amount |
|---|---|
| 8/11/17 | $50,000 |
| 9/6/17 | $50,000 |
| 9/18/17 | $50,000 |
| 2/13/18 | $50,000 |
| 2/16/18 | $50,000 |
| 2/21/18 | $50,000 |
| 2/26/18 | $50,000 |
|  | $350,000 Total |

11. Based on conversations with CC-1 and a review of messages on his cellphone, I know that on at least one occasion, at the direction of a co-conspirator ("CC-2"), CC-1 sent money received from Victim-1 to LAZETT FISHER, a/k/a "Lazette Fisher," the defendant.

### Other Victims Made Payments to LAZETT FISHER and the Conspirators

12. Based on my review of text messages obtained from a cellular phone belonging to LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, I have learned the following, in substance and in part:

   a. The phone contains messages between FISHER and a co-conspirator ("CC-3"), who lives in Jamaica.

   b. On or about March 6, 2018, CC-3 messaged FISHER asking her to receive a FedEx package with a tracking number ending in 8934 ("Package-1"). FISHER responded that her brother received the package. CC-3 asked about the package's contents, and FISHER responded "6 something." Based on my training and experience and involvement in this investigation, I believe that Fisher was referring to the amount of cash in Package-1, i.e. approximately $6,000.

   c. On or about March 7, 2018, CC-3 messaged FISHER informing her that she would receive a package ("Package-2") the next day.

   d. On or about March 10, 2018, CC-3 messaged FISHER and informed her that a package with a tracking number ending in 9215 ("Package-3") would arrive that day.

   e. On or about March 15, 2018, CC-3 messaged FISHER and stated, in sum and substance, that FISHER's mother would receive a package with a tracking number ending in 8702 ("Package-4") the next day. At the time, FISHER was in Jamaica.

13. Based on my review of shipping records, bank records, records obtained from the family of another victim ("Victim-2"), and my conversations with family members of Victim-2, I have learned the following:

   a. In or about 2018, Victim-2 received or made at least 29 calls to Jamaican phone numbers. At least one Jamaican

5

phone number that called Victim-2 was also sent in a message from FISHER to CC-3.

   b. Based on my conversations with family members of Victim-2, I have learned that the Jamaican callers informed Victim-2 that she had won a lottery, and that she sent cash payments through the mail at their direction.

   c. On or about March 5, 2018, Victim-2 sent Package-1 using FedEx from California to LAZETT FISHER, a/k/a "Lazette Fisher," the defendant. The package was received on or about March 6, 2018.

   d. On or about March 7, 2018, Victim-2 sent Package-2 using UPS from California to FISHER, with an expected delivery date of March 8, 2018.

   e. On or about March 9, 2018, Victim-2 sent Package-3 using UPS from California to FISHER, with an expected delivery date of March 10, 2018. Also on or about March 9, 2019, Victim-2 withdrew approximately $19,000 from a bank account.

   f. On or about March 15, 2018, Victim-2 sent Package-4 using FedEx from California to FISHER, with an expected delivery date of March 16, 2018. Between on or about March 12 and on or about March 15, 2018, Victim-2 withdrew approximately $21,500 from a bank account.

   g. Based on my training and experience and involvement in this investigation, I believe at the direction of the callers perpetrating the Lottery Scheme, Victim-2 mailed cash to FISHER in Package-1, Package-2, Package-3, and Package-4.

   14. Based on my review of messages from the phone of LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, I have learned that packages FISHER received at CC-3's direction contained U.S. currency. For example:

   a. On or about June 27, 2017, CC-3 messaged FISHER and asked, in relevant part, "how much is in the package," to which FISHER replied "1800." Based on my training, experience, and involvement in this investigation, I believe FISHER was referring to $1,800.

b. On or about November 15, 2017, CC-3 messaged FISHER and stated, in relevant part, that a package was coming with "3k" in it. Later that day, FISHER texted CC-3 to say that "[i]t came" and noted "3." Based on my training, experience, and involvement in this investigation, I believe FISHER was referring to $3,000.

c. On or about November 29, 2017, CC-3 messaged FISHER and asked, in relevant part, "how much was in the package yesterday," to which she replied "1,200". Based on my training, experience, and involvement in this investigation, I believe FISHER was referring to $1,200.

d. On or about December 5, 2017, CC-3 sent FISHER the tracking number for a package. After FISHER received the package, she messaged CC-3, in relevant part, "95". Based on my training, experience, and involvement in this investigation, I believe that "95" means $9,500.

e. On certain occasions, FISHER would message CC-3 photos of large sums of cash, including the following photo:



15. Based on my review of messages from the phone of LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, and shipping records, I have learned that, between approximately in or about July 2017 and March 2018, on at least approximately

thirty occasions, FISHER or a family member of FISHER received a package at the direction of CC-3. These packages came from at least four other individuals. Based on my training and experience and involvement in this investigation, I believe these packages contained cash and were sent by victims of the Lottery Scheme, consistent with the pattern of conduct described above with respect to Victim-1 and Victim-2.

FISHER and the Conspirators Sent Victim Money to Jamaica

16. Based on my review of Western Union Records, CC-1's bank records, and my conversations with CC-1, I have learned that between approximately 2012 and 2017, at the direction of CC-2, CC-1 sent money he received from Victim-1 to CC-2 via Western Union transfers and wire transfer and by smuggling the cash in bulk into Jamaica himself or by giving the cash to others to smuggle in bulk to Jamaica.

17. Based on my review of messages from the phone of LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, shipping records, and bank records, I have learned that FISHER sent money contained in the packages to Jamaica via wire or by depositing funds and allowing them to be withdrawn at Jamaican ATMs. In particular:

a. On or about July 15, 2017, CC-3 informed FISHER that a package was due to arrive that same day. FISHER, while in the United States, messaged CC-3 that same day to state, in relevant part, that a package had arrived, and that she would place "4 on pink" and "5 on blu[e]". That same day, FISHER deposited approximately $5,400 of cash into one of her bank accounts ("Account-1"). On or about July 17, 2017, FISHER deposited approximately $4,000 of cash into another of her bank accounts ("Account-2"). The following day, FISHER sent approximately $5,000 from Account-2 to CC-3 at a bank account in Jamaica. In or about July 2017, approximately $3,500 was withdrawn from Account-1 at an ATM in Negril, Jamaica.

b. On at least three other occasions, FISHER or her friends or family members wired money to Jamaica. For example:

i. On or about August 31, 2017, CC-3 messaged FISHER informing her that a package would arrive and providing the tracking information. On or about September 1, 2017, according to shipping records, that package was delivered. On or about September 5, 2017, FISHER asked CC-3 how much her

sister ("CC-4") should send, to which CC-3 replied "49." On or about September 7, 2017, approximately $5,000 was deposited in a bank account ("Account-3") belonging to CC-4. That same day, approximately $4,900 was wired from Account-3 to CC-3 at a bank account in Jamaica.

       ii. On or about February 13, 2018, CC-3 messaged FISHER informing her that she would receive a package the next day. On or about February 20, 2018, approximately $5,000 was deposited in Account-3. On or about February 23, 2018, approximately $5,000 was wired from Account-3 to CC-3 at a bank account in Jamaica.

       iii. On or about March 10, 2018, two days after receiving Package-2, FISHER deposited approximately $5,800 in Account-1. On or about March 13, 2018, approximately $5,000 was sent by international wire from Account-1 to CC-3 at a bank account in Jamaica.

     c. On the following other occasions, money was deposited in bank accounts belonging to FISHER, her family members, or her friends shortly after FISHER or her family members received packages. Money was then withdrawn from those accounts at ATMs in Negril, Jamaica:

| Approximate date package received in Pennsylvania | Approximate amount of money deposited | Approximate dates money withdrawn in Jamaica | Approximate amount of money withdrawn in Jamaica |
|---|---|---|---|
| June 27, 2017 | $1,500 | June 28-30, 2017 | $1,495.18 |
| July 28, 2017 | $5,000 | August 1-13, 2017 | $6,565 |
| November 28, 2017 | $4,000 | November 29-December 7, 2017 | $3,535 |
| December 21, 2017 | $3,000 | December 27, 2017-January 3, 2018 | $3,030 |
| December 28, 2017 | $5,500 | January 2-8, 2018 | $5,496.77 |
| January 13, 2018 | $7,000 | January 13-22, 2018 | $4,930 |

| March 10, 2018 | $2,000 | March 12-19, 2018 | $1,972.07 |
|---|---|---|---|
|  |  |  | $27,024.02 Total |

WHEREFORE the deponent respectfully requests that a warrant be issued for the arrest of LAZETT FISHER, a/k/a "Lazette Fisher," the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

ERIN MARKEVITCH
Task Force Officer
Homeland Security Investigations

Sworn to before me this
13th day of September, 2019

THE HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK